Sue L. McDANIEL and David A. McDaniel, Plaintiffs-Appellees,

v.

GENERAL CARE CORPORATION and Christine W. Bersin, Defendants-Appellants.

Court of Appeals of Tennessee, Eastern Section.

June· 30, 1981.

Permission to Appeal Denied by Supreme Court Sept. 28, 1981.

Warren Butler with Butler, Vines, Babb & Threadgill, Knoxville, for defendants-appellants.

James W. Justice with Mann & Justice, Oliver A. Smith, III, Knoxville, for plaintiffs-appellees.

## OPINION

SANDERS, Judge.

The issues on this appeal involve the application of T.C.A. § 23–3409 and 29–26–119 of the Medical Malpractice Statutes.

The Plaintiff-Appellee, Sue L. McDaniel, sued the Defendants-Appellants, General Care Corporation and Christine W. Bersin, for medical malpractice. In her complaint she alleges that General Care Corporation operates Park West Hospital which provides facilities for the care and treatment of the sick and injured. Defendant Christine Bersin is a registered nurse and was employed by the hospital and practiced her profession there. The Plaintiff was admitted to the hospital for the purpose of undergoing surgery. On the night before surgery Defendant Bersin gave the Plaintiff an injection of Thorazine subcutaneously in the area of her left hip. Subsequent to this injection the Plaintiff developed a grotesque lesion in her left hip requiring extensive medical treatment and surgery. The Defendants failed to properly administer the injection. The negligence of the Defendants resulted in the Plaintiff's sustaining disabling and disfiguring injuries to her hip, causing great pain and mental anguish. As a result of her injuries she had loss of wages and doctors', hospital and medical expenses. The Plaintiff, David A. McDaniel, husband of the Plaintiff, joined in the complaint seeking to recover medical expenses and loss of consortium.

The Defendants, for answer, denied they were guilty of any negligence or any failure to properly treat the Plaintiff. They said their care and treatment of the Plaintiff was well within standards of care for hospitals and nurses of the community.

The case was tried before a jury which found the issues in favor of the Plaintiff, Sue McDaniel, and fixed her damages at $55,000.

The Defendants' motion for a new trial was overruled and they have appealed.

Before the case was tried it had been referred to a medical malpractice review board and that board had filed a majority report and a minority report. The majority report found the Plaintiff's claim "with merit" and the minority report found the claim "without merit."

Upon the trial of the case the court permitted counsel for the Plaintiffs to read the majority report to the jury but would not permit counsel for the Defendants to read the minority report. The Defendants insist this was error, and we agree.

T.C.A. § 23–3409, which was in effect at the time of the trial, provides, as pertinent here, as follows:

"The board shall prepare a formal statement of its recommendations. If a minority number of the board members do not agree with the statement and recommendations of the majority, a minority statement may be prepared which shall be identified as such.

"The formal statement of the board and the minority statement, if any, shall be admissible at a subsequent trial as an exception to the hearsay rule. The formal statement of recommendations of the board or the minority statement shall in-

clude, but not be limited to, (1) the standard of conduct applied; (2) the alleged deviation from such standard; and (3) findings and conclusions."

The majority report provides: "This cause came on to be heard before the Medical Malpractice Review Board, in the Eastern Grand Division, Knoxville, Tennessee, upon the 8th day of February, 1980, upon notice of claim filed by plaintiff, the responsive answer by the defendant, the oral testimony of witnesses examined before the Review Board and upon the record as a whole, from all of which it appeared to the Board that the claim is with merit.

"The standard of Care of nurses giving shots of thorazine require that the nurse give the shot in the gluteus muscle.

"The deviation from such standard was the fact of giving a shot of thorozine in subcutaneous tissue rather than in the muscle.

"We find that defendant nurse Bersin gave a shot of thorazine to the plaintiff at the time alleged in subcutaneous."

The minority report provides: "This cause came on to be heard before the Medical Malpractice Review Board, in the Eastern Grand Division, Knoxville, Tennessee, upon the 8th day of February, 1980. Upon notice of claim filed by plaintiff, the responsive answer by the defendant, the oral testimony of witnesses examined before the Review Board and upon the record as a whole, from all of which it appeared to the Board that the claim is without merit.

"The Following Report by Robert W. Trotter, M.D.

"I feel there is insufficient proof that the single injection of thorazine by one nurse, Christine Bersin, could have caused this patient's sterile abscess or entity. The injection was given properly and not in the site of the 'knot' or bruise. I feel the patient had excellent physicians, and nurses and that there was no abnormal or wrong procedures done. The pathologist has attested that the patient's problem was caused by the thorazine injection. However, I can see no definite proof that one shot by one nurse

caused this problem and must emphasize this.

"The Following Report by Rick Edwards, R.N.

"It is of my opinion that Mrs. Sue McDaniel has no merit to consider in this case. I am not convinced that the one injection of thorazine in question can be considered as the sole originator of the plaintiff's problem. Doctors questioned voiced 'reasonable medical proof' that the excoriation could have been caused by a subcuteaneous injection specifically addressing the thorazine but not considering other injections given by other nurses. In my opinion, Ms. Bersin exercised appropriate standard of care. She had the correct medication, the correct length of needle, the correct patient and the correct site for injection. Ms. Bersin noticed a bruised area that had knots present when preparing to give the injection. She exercised good nursing judgment by avoiding that specific area for injection of the thorazine and chose an area soft and clear of discoloration for her injection site. Multiple injections were given by other nurses subsequent to the thorazine injection in question. It is of my opinion that this one injection of thorazine can not be named as the specific cause of the problem with Mrs. McDaniel's hip."

It is not clear why the court refused to permit the Defendants to read the minority report, in light of the statute. In making his ruling the following colloquy transpired between the court and counsel for the Defendants:

"MR. BUTLER: Your Honor, there is a majority report and a minority report and he wants to read the majority report and doesn't want me to read the minority report.

"THE COURT: That's right. I don't think the minority report has anything to do with it; just what their findings are.

"MR. BUTLER: Your Honor, it's a five-member board, it was a three-two decision—

"THE COURT: I don't care what it was. The minority has nothing to do with the

opinion. In other words, that is what the act says that he may read the result of the recommendation of the board and that is it.

"MR. BUTLER: This is the recommendation of the board.

"THE COURT: The recommendation of the board? The recommendation of the board should reflect the majority report.

"MR. BUTLER: That's not what the act says.

"THE COURT: As far as I'm concerned that's what it says because I'm not going to go in there and let you show that there may be a minority report. That is not the issue. The recommendation of the board was that she did or didn't—whatever it is, I haven't even read it, . . . ."

It appears from the court's statement that he ruled on the matter without having read the report.

In the Plaintiffs' brief they argue that any error which may have been made by the court's originally denying Defendants' request to read the report was cured by a subsequent offer on their part to permit a portion of the minority report to be submitted to the jury.

The record reflects that after all of the evidence had been introduced but before argument of the case, Plaintiffs' counsel stated, in effect, that he would agree for the jury to be advised there was a minority report which stated the Plaintiffs' claim was "without merit," and nothing more. This concession was conditioned on the Defendants' agreeing not to assign the court's original action as error. The Defendants refused to enter into such an agreement, and we hold they were within their rights to do so.

The cases of *Baldwin v. Knight*, Tenn., 569 S.W.2d 450 (1978) and *Runnells v. Rogers*, Tenn., 596 S.W.2d 87 (1980) both hold that the jury is entitled to give "weight, credit and value" to the review board's report. In order to properly evaluate the review board's report we think it is essential for the jury to have not only the majority report but the minority report, and we think this is mandated by the statute itself.

Under the facts in the record the jury had every reason to conclude that the report read to them had the sanction of the entire board. The jury was not only deprived of the information in the minority report, they were not permitted to know there was one. In ruling on the admissibility of the report, the court said, ". . . I'm not going in there and let you show there is a minority report."

The Defendants also present the issue of whether or not the court erred in permitting the Plaintiffs to prove medical expenses and loss of wages which were either reimbursed to them or paid by sources other than Plaintiffs' own assets.

We think he did. T.C.A. § 23–3418 which was in force at the time of the trial, now codified as § 29–26–119, provides:

"In a malpractice action in which liability is admitted or established, the damages awarded may include (in addition to other elements of damages authorized by law) actual economic losses suffered by the claimant by reason of the personal injury, including, but not limited to cost of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimants or of the members of the claimants' immediate family and insurance purchased in whole or in part, privately and individually."

On the trial the Plaintiff testified she had lost wages of $4,092.53 and incurred medical expenses in the amount of $9,534.30. This evidence was permitted over the objection of the Defendants and the court would not permit the Defendants to establish before the jury what amount of these expenses was either reimbursed to the Plaintiffs or paid by sources other than Plaintiffs' own

assets. The record fails to disclose the court's reason for his ruling and we think it is clearly in derogation of the statute. A stipulation between the parties shows that none of the wages were, in fact, lost and the Plaintiffs were reimbursed for all of the medical expenses.

■ The Appellees insist that the trial court was correct and say T.C.A. § 29–26–119 is unconstitutional.

The question of the constitutionality of the statute was not raised in the trial court and is raised for the first time on this appeal. Rule 24.04, Tennessee Rules of Civil Procedure, requires that the attorney general be made a party to any proceeding wherein the constitutionality of a statute is attacked. There is no showing that this rule has been complied with. We accordingly hold that the Plaintiffs are not at liberty to raise the constitutional question at this stage of the proceeding.

The issues are found in favor of the Appellants. The judgment of the trial court is reversed and the case is remanded for a new trial. The cost of this appeal, together with the cost in the trial court, is taxed to the Appellees.

PARROTT, P. J., concurs.

FRANKS, J., dissents.

FRANKS, Judge, dissenting.

I respectfully dissent from the result reached in the majority opinion.

The minority report which the trial judge refused to admit in evidence is set out in full in the majority's opinion and I do not believe the separate, informal statements by the doctor and nurse are admissible under the statute. The separate statements of the two board members are not in the statutory form prescribed and amount to comments on the evidence presented before the board and identify the board members by name and profession, all proscribed by statute. *Baldwin v. Knight*, 569 S.W.2d 450 (Tenn.1978), states:

[T]he second sentence of T.C.A., § 23–3409 excludes from admissibility at the

trial any attempt to bring to the attention of the jury what evidence was or was not adduced at the board hearing. In short, nothing about the MMRB hearing, beyond the language of the formal statement, is admissible at trial. At 454.

While defendants' counsel insisted on reading the statements by the doctor and nurse, the trial judge, as the majority opinion holds, erroneously refused to allow any mention of the minority report or the reading of the formal report as mandated by T.C.A., § 23–3409.

The majority's opinion does not discuss whether the error committed by the trial judge prejudiced appellants to the point that a new trial is in order. Our Supreme Court has held that failure of a trial judge to comply with a provision of the Medical Malpractice Review Board and Claims Act may be harmless error. *Runnells v. Rogers*, 596 S.W.2d 87 (Tenn.1980).

The statute provides that the minority report "shall be admissible as an exception to the hearsay rule." Thus, the matter is an evidentiary question. *Baldwin, supra.* Generally, the exclusion of evidence is not reversible error unless prejudice to the party seeking reversal is shown. *Tibbs v. Ake*, 505 S.W.2d 232 (Tenn.1974); *Jordan v. State*, 217 Tenn. 307, 397 S.W.2d 383 (1965).

We are required by T.R.A.P., Rule 36(b) to inquire into the prejudicial effects of the error in the trial below before the lower court judgment is set aside. The rule provides:

Effect of error.—A final judgment from which relief is available and otherwise appropriate *shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.* [Emphasis supplied.]

I cannot say, considering the whole record, that the absence of the formal minority report from the evidentiary record more probably than not affected the judgment and, accordingly, would affirm the judgment with the modification hereinafter sug-

gested. *Baldwin* states, and *Runnells* reiterates, that the board's report is primarily to encourage settlements and not for use as an evidentiary substitute for expert testimony, but is admissible "to be given such weight, credit and value as the jury may ultimately determine." *Baldwin*, p. 453.

In this case, the evidence was in sharp conflict as to the procedure followed by the nurse in administering the shot and whether the shot caused plaintiff's condition. There is no dispute as to the standard for administering shots of this nature, as conceded by defendant nurse. She stated on cross-examination, in response to the following question:

> *Q.* Now, you would further agree that it would be a departure from the standard nursing practice not to give it in the deep muscle? Isn't that correct?
>
> *A.* Yes.

Assuming *arguendo* the informal reports of the doctor and nurse made in connection with the minority report were admissible, there is ample evidence in the record from witnesses as to the substance of these statements from which the triers of fact could have determined plaintiff's claim to be without merit had the jury accepted the nurse's version of how the shot was administered. Defendants offered expert testimony which was predicated on the hypothesis of accepting as fact the nurse's testimony. At least one expert witness for defendants conceded a shot administered under conditions as plaintiff described would fall short of the professional standard.

The burden of showing the error affected the results of trial is on the appellants. *Cook v. Blytheville Canning Co.*, 210 Tenn. 414, 359 S.W.2d 828 (1961). I conclude the judgment should not be set aside since, in my opinion, considering the whole record, the error of excluding the minority report most probably did not affect the judgment.

The remaining issue relative to the applicability of *T.C.A.*, § 23–3418 may properly be resolved on appeal. I agree with the majority that the constitutionality of the statute is not properly before the court but the final judgment should be modified by

reducing in an amount equal to the sum of the wages and stipulated medical expenses which fall within the ambit of the statute. Accordingly, I would modify and affirm the judgment.