# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

September 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

IN RE:
THE ADOPTION OF
FEMALE CHILD, E.N.R.

)
)
)
)
)
)
)

Lawrence Chancery
No. 8663-97

Appeal No.
01A01-9806-CH-00316

## DISSENTING OPINION

I cannot concur with the court's disposition of this case. My disagreement stems, not from a belief that Timothy Ray Rose could or should ultimately succeed in preventing the termination of his parental rights, but rather from my belief that he, like anyone else, is entitled to have the trial and appellate courts consider his challenge to the constitutionality of a statute that materially affects one of his fundamental liberty interests. The court has decided to sidestep this issue by invoking waiver principles that cannot be reconciled with the Tennessee Supreme Court's decisions regarding the proper procedure for adjudicating challenges to a statute's constitutionality. I would find that the trial court committed reversible error by failing to cause the Attorney General and Reporter to be notified that Mr. Rose had challenged the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6) (Supp. 1998). Accordingly, I would vacate the decision and remand the case with directions to address the constitutional challenge to Tenn. Code Ann. § 36-1-113(g)(6) after complying with the mandatory requirements of Tenn. R. Civ. P. 24.04 and Tenn. Code Ann. § 29-14-107(b) (1980).

## I.

E.N.R. was born on December 21, 1993. Her parents, Timothy Ray Rose and Amy Jenell Stanford were not married, but Ms. Stanford listed Mr. Rose as E.N.R.'s father on her birth certificate. Mr. Rose was present at his daughter's birth and frequently visited with the child and her mother. Mr. Rose also gave Ms. Stanford money to help with the child's expenses. Mr. Rose's circumstances abruptly changed shortly after E.N.R.'s birth. On January 25, 1994, he pleaded guilty to the rape of

the five-year-old daughter of his cousin's girlfriend, and on February 8, 1994, he began serving a twelve-year prison sentence.

Ms. Stanford frequently took E.N.R. to visit with Mr. Rose when he was first incarcerated,[1] and Mr. Rose continued to send Ms. Stanford money to the extent that he was able. As time passed, however, Ms. Stanford became less inclined to take E.N.R. to visit Mr. Rose. Mr. Rose last saw E.N.R. in October 1996. Ms. Stanford married Jonathan Lamar Reed in May 1997.

On August 28, 1997, Mr. and Ms. Reed filed a petition in the Chancery Court for Lawrence County seeking to terminate Mr. Rose's parental rights and to allow Mr. Reed to adopt E.N.R. On the same day, Mr. Rose filed a pro se petition to legitimate E.N.R. in the Lawrence County Juvenile Court. The trial court later consolidated Mr. Rose's legitimation petition with the Reeds' adoption petition and appointed an attorney to represent Mr. Rose. Throughout the remainder of the proceedings, Mr. Rose vigorously contested the involuntary termination of his parental rights. He also challenged the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6), the statute upon which the Reeds had predicated their petition to terminate his parental rights.[2]

On February 20, 1998, the trial court entered an order finding that Mr. Rose was E.N.R.'s biological father and directing him to pay Ms. Reed $9.03 per month for his daughter's support. On May 15, 1998, the trial court conducted a hearing on the merits with regard to the competing petitions for legitimation and adoption. By this time, Mr. Rose had become eligible for parole. After hearing the testimony, the trial court found that Tenn. Code Ann. § 36-1-113(g)(6) was constitutional,[3] terminated Mr. Rose's parental rights based solely on Tenn. Code Ann. § 36-1-

---

[1]By Mr. Rose's count, Ms. Stanford visited him sixty-two times between April 1994 and October 1996 and brought E.N.R. with her on most of these visits. Ms. Stanford conceded that she brought E.N.R. to visit Mr. Rose in prison on approximately one-half of her visits.

[2]Even though the record does not reveal precisely how Mr. Rose's lawyer challenged the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6), the transcript of the May 15, 1998 proceeding indicates that counsel for both parties and the trial court were aware that the constitutionality of the statutory grounds for terminating Mr. Rose's parental rights was at issue.

[3]The trial court indicated that it was obligated to follow *Worley v. State*, No. 03A01-9708-JV-00366, 1998 WL 52098 (Tenn. Ct. App. Feb. 10, 1998) (No Tenn. R. App. P. 11 application filed) in which the Eastern Section with little discussion declared that Tenn. Code Ann. § 36-1-113(g)(6) was constitutional.

113(g)(6),[4] and dismissed Mr. Rose's legitimation petition. Reflecting its view of the closeness of the evidence, the trial court ended the proceeding with this comment: "I think, Mr. Rose, you probably were and, except for this conviction, would have continued to be a good father for this child."

Mr. Rose appeals the termination of his parental rights. He raises two issues. First, he asserts that Tenn. Code Ann. § 36-1-113(g)(6) violates the Due Process Clause of the Fourteenth Amendment and Tenn. Const. art. I, § 8. Second, he asserts that the evidence does not support the trial court's conclusion that terminating his parental rights and permitting Mr. Reed to adopt E.N.R. is in the child's best interests. Without addressing Mr. Rose's principal claim that the statutory basis for terminating his parental rights is unconstitutional, this court has decided that E.N.R.'s interests will be best served by terminating Mr. Rose's parental rights and by permitting Mr. Reed to adopt her.

## II.

Litigation of constitutional questions is not intended to be nonchalant. The General Assembly and the courts have put in place an elaborate set of procedures - well known to this court - that should be invoked when the constitutionality of a statute is attacked. These procedures serve two purposes: first, to assure the existence of a genuine case or controversy and, second, to assure a vigorous defense of the statute. Compliance with these procedures is not left to the parties alone. The trial and appellate courts have obligations as well.

Tenn. Code Ann. § 29-14-107(b) states that whenever a statute is alleged to be unconstitutional, "the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard." While the statute does not clearly identify who is responsible for seeing to it that the attorney general is served with a copy of the complaint challenging the constitutionality of a statute, Tenn. R. Civ. P. 24.04 corrects this oversight. In unmistakable terms, the rule states: "When the

---

[4]Regrettably, the trial court employed the wrong legal standard to determine whether Mr. and Ms. Reed had established that terminating Mr. Rose's parental rights was in E.N.R.'s best interests. The trial court employed a "preponderance of the evidence" standard. As Judge Cottrell points out in the court's opinion "the [trial] court must determine whether it has also been shown by clear and convincing evidence that termination of the parent's rights is in the child's best interests." The court's use of the passive voice should not obscure the fact that the burden of persuasion on this point rests with the persons seeking to terminate the biological parent's parental rights.

validity of a statute of this state . . . is drawn in question in any action to which the State or an officer or agency is not a party, the court shall require that notice be given the Attorney General, specifying the pertinent statute, rule or regulation." The comment to Tenn. R. Civ. P. 24.04 also leaves no doubt that the trial court's obligation to ensure that the Attorney General is notified of a challenge to a statute's constitutionality is not limited to declaratory judgment proceedings but rather applies to "actions of any type."

Neither Tenn. Code Ann. § 29-14-107(b) nor Tenn. R. Civ. P. 24.04 require the Attorney General, once notified of a constitutional challenge to a statute, to defend the statute. After receiving notice, the Attorney General's office may, for reasons satisfactory to the Attorney General, notify the court that the office does not intend to become involved in the suit. If, however, the Attorney General declines to defend a statute's constitutionality, he or she must notify the Speakers of the House and Senate of the decision, *See* Tenn. Code Ann. § 8-6-109(b)(9) (1993). The Speakers of the House and Senate, acting jointly, may then employ counsel to defend the statute. *See* Tenn. Code Ann. § 8-6-109(c).

In addition to the statute and rule governing constitutional attacks on statutes in the trial court, Tenn. R. App. P. 32 ensures that the Attorney General will receive notice when the constitutionality of a statute is challenged on appeal. Tenn. R. App. P. 32 does not supplant the requirements of Tenn. R. Civ. P. 24.04 and Tenn. Code Ann. § 29-14-107(b)[5] and is premised on the assumption that the requirements of Tenn. R. Civ. P. 24.04 and Tenn. Code Ann. § 29-14-107(b) were satisfied in the trial court. In the event that a party challenging the constitutionality of a statute fails to serve a copy of its brief on the Attorney General, Tenn. R. App. P. 32.02(d) directs the appellate court not to dispose of the appeal until the Attorney General has been notified and given an opportunity to defend the statute.[6]

---

[5]The Advisory Commission Comment to Tenn. R. App. P. 32 states, in part: "The provisions of this rule are supplementary to, and do not affect the provisions of Tenn. Code Ann. § 23-1107 (1955) [recodified as Tenn. Code Ann. § 29-14-107] and rule 24.04 of the Tennessee Rules of Civil Procedure, with respect to notice to the Attorney General in trial court proceedings."

[6]Despite some equivocation in the language of Tenn. R. App. P. 32(d), the Advisory Commission Comment explains that this section "ensures that in the absence of notice to the Attorney General the appellate court will not dispose of the appeal."

A comparison of what actually happened in this case with the requirements of the applicable rules and statutes reveals that not one single notice provision has been complied with. Neither Mr. Rose nor his appointed lawyer notified the Attorney General of Mr. Rose's challenge to the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6). The trial court did not discharge its obligation to ascertain whether the Attorney General had received the required notice and to direct that proper notice be given if it had not already been done. Even after it became evident that the Attorney General had not been properly notified of the constitutional challenge to Tenn. Code Ann. § 36-1-113(g)(6) in either the trial or the appellate court, this court compounded the problem by deciding the appeal without first giving the Attorney General an opportunity to respond.[7]

The Tennessee Supreme Court has provided clear directions concerning an appellate court's responsibility when it discovers that a trial court has addressed the constitutionality of a statute without the required notice to the Attorney General. In the absence of proper notice to the Attorney General, an appellate court must vacate the decision and remand the case to the trial court with directions to revisit the issue of the constitutionality of the statute after the required notice has been given to the Attorney General. *See Buena Vista Special Sch. Dist. v. Board of Election Comm'rs of Carroll County*, 173 Tenn. 198, 202, 116 S.W.2d 1008, 1009 (1938). The Court followed this route most recently in litigation successfully challenging the constitutionality of the Tennessee Constitution's prohibition against ministers serving in the General Assembly. Notwithstanding the importance of the issue and the impending election, the Court remanded the case to the trial court "to cure the deficiency of failure to make the Attorney General of Tennessee a party." *Paty v. McDaniel*, 547 S.W.2d 897, 901 (Tenn. 1977), *rev'd on other grounds*, 435 U.S. 618, 98 S. Ct. 1322 (1978).[8]

---

[7]The court observes in a footnote that the record contains a letter from an assistant attorney general stating that "the state has no interest" in the case. As I understand it the court has concluded that this letter does not establish compliance with Tenn. R. App. P. 32.02(d). I agree.

[8]The per curiam order alluded to in the Court's opinion was entered on October 15, 1976. It stated, in part:

> The record in this cause fails to reflect that the Attorney General of the State was made a party or served with a copy of the proceedings in accordance with T.C.A. § 23-1107 and Rule 24.04, Tennessee Rules of Civil Procedure. These requirements are mandatory where the constitutionality of an act of the Legislature is before the
>
> (continued...)

I can find only one case in which the Tennessee Supreme Court decided against remanding a case to the trial court to cure the failure to notify the Attorney General. That case involved a collusive lawsuit filed by the county judge for Hamilton County against the county trustee for Hamilton County seeking to declare unconstitutional a recently enacted state law that changed the delinquency date for payment of property taxes. When the case reached the Tennessee Supreme Court, the Court noted that the Attorney General had not been made a party but dismissed the case because the interests of the county judge and the county trustee were not sufficiently adverse. *See Cummings v. Shipp*, 156 Tenn. 595, 597-98, 3 S.W.2d 1062, 1063 (1928).[9] The Court's conclusion that the trial court lacked jurisdiction to consider the complaint obviated the need to notify the Attorney General.

The court seeks to justify its decision not to remand this case by citing Court of Appeals decisions stating that appellate courts may, in their discretion, disregard Tenn. R. Civ. P. 24.04, Tenn. Code Ann. § 29-14-107(b), and Tenn. R. App. P. 32 and decline to remand a case when the Attorney General has not received the required notice. I would not to follow these cases to the extent that they are contrary to *Paty v. McDaniel* and *Buena Vista Special Sch. Dist. v. Board of Election Comm'rs of Carroll County.*[10] The other decisions cited by the court are inapposite because they involved either a proceeding in which the constitutional challenge was not raised in

_____

[8](...continued)
Court in an action for a declaratory judgment. [citations omitted]

> Due to the failure to include a necessary party, the decree of the Chancery Court invalidating the qualification provisions of Chapter 848, § 4, Public Acts of 1976, on constitutional grounds is of no force and effect.

*Paty v. McDaniel*, Hamilton Equity (Tenn., Oct. 15, 1976).

[9]The Court's concern about collusion between the county judge and the county trustee was apparently well-founded. After the Court dismissed the first suit, the parties switched sides and filed a second suit challenging the statute's constitutionality. On this occasion, the parties notified the Attorney General who defended the constitutionality of the statute. On appeal, the Court upheld the trial court's conclusion that the statute violated Tenn. Const. art. II, § 28. *See Shipp v. Cummings*, 158 Tenn. 526, 529, 14 S.W.2d 747, 748 (1929).

[10]For example, I would find little solace in the notion that this court should remand a case to give the Attorney General the required notice when the trial court has determined that a statute is unconstitutional but not when the trial court has upheld the statute. *See Wallace v. Knoxville's Community Dev. Corp.*, 568 S.W.2d 107, 110 (Tenn. Ct. App. 1978) (stating that "if the circuit judge had held the statute unconstitutional, we more than likely would have remanded the cause"). The Eastern Section apparently still follows this practice because there is no indication in *Worley v. State* that the Attorney General received notice on either the trial or appellate level that the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6) had been challenged.

the trial court, *see McDaniel v. General Care Corp.*, 627 S.W.2d 129, 133 (Tenn. Ct. App. 1981), or a challenge to the constitutionality of a city ordinance that the Attorney General is not required to defend. *See Harless v. City of Kingsport*, No. 03A01-9707-CH-00289, 1998 WL 131519, at *7 (Tenn. Ct. App. Mar. 25, 1998) (No Tenn. R. App. P. 11 application filed).[11]

The court's efforts to distinguish *Paty v. McDaniel* and *Buena Vista Special Sch. Dist. v. Board of Election Comm'rs of Carroll County* on procedural grounds are unconvincing. Asserting that a court's decision to entertain a constitutional issue somehow depends on the manner in which the issue is raised is judicial sophistry of the first order in light of the broad, all inclusive language of Tenn. R. Civ. P. 24.04 and Tenn. R. App. P. 32(a). These rules do not permit courts to draw distinctions based on the manner in which a constitutional question is raised. They state quite plainly that challenges to the constitutionality of a statute in any action or appeal to which the State or an officer or agency is not a party should not be decided until the Attorney General has been notified of the proceeding. Thus, as long as Mr. Rose challenged the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6) in the trial court, how he did it should be of little significance.

The court's conclusion that Mr. Rose waived his opportunity to challenge the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6) does not sit well with the facts of this case or with the seriousness of the constitutional issues being raised. These issues affect not only rights personal to Mr. Rose but also the rights of all those who may be subjected to this statute in the future. The court has decided to penalize Mr. Rose for an oversight for which he is not completely responsible. In the final analysis, both Tenn. R. Civ. P. 24.04 and Tenn. R. App. P. 32 place an obligation on the courts to see to it that the Attorney General receives notice of a constitutional

---

[11]After holding that Mr. Harless could not challenge the constitutionality of the local ordinance and the underlying state statute because he had not complied with Tenn. Code Ann. § 29-14-107(b), Tenn. R. Civ. P. 24.04, or Tenn. R. App. P. 32, the court proceeded to decide the constitutional question anyway. *See Harless v. City of Kingsport*, 1998 WL 131519, at *7.

challenge to a statute. This obligation exists notwithstanding the court's notions about the merits of the constitutional issue being raised.

Retreating behind the shield of judicial discretion is likewise unavailing. The question here is not whether appellate courts have some leeway in determining the nature of the relief that should be granted in a particular case. Of course, appellate courts have discretion in these matters. The question here is whether the court, exercising its discretion, should brush aside Mr. Rose's challenge to the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6). In my mind, the court's explanation for its decision does not ring true. Following the lead of the Tennessee Supreme Court, I would vacate the decision and remand the case to the trial court to reconsider Mr. Rose's challenge to Tenn. Code Ann. § 36-1-113(g)(6) after giving the Attorney General an opportunity to defend the statute.

## III.

My concern over the court's decision to sidestep Mr. Rose's challenge to the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6) is heightened by the fundamental nature of the rights at stake and by the serious cloud hanging over the challenged statute. Until the constitutional issues surrounding Tenn. Code Ann. § 36-1-113(g)(6) can be fully aired, persons like Mr. Rose, whom some might view as society's detritus, face the almost certain loss of their relationships with their children without a prior in-depth judicial consideration of whether the affected child will be harmed if his or her ties to a parent are not severed. The potential psychological ramifications of severing a child's relationship with a parent are severe enough to require individualized termination procedures that focus chiefly on the relationship between the child and the parent, not merely the parent's status.

Mr. Rose's parental relationship with E.N.R. is a fundamental liberty interest entitled to the greatest possible constitutional protection. *See Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394-95 (1982); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996); *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994); *Hawk v. Hawk*, 855 S.W.2d 573, 579 (Tenn. 1993). He was not stripped of these rights when he was convicted of rape and sentenced to serve twelve years in

prison.[12] Nor was he stripped of his right to seek judicial redress for unconstitutional infringements of his rights. Indeed, Mr. Rose's right of access to the courts has become a fundamental political right because it is his only effective means to preserve his other rights. *See Hudson v. McMillian*, 503 U.S. 1, 15, 112 S. Ct. 995, 1003 (1992) (Blackmun, J., concurring in the judgment).

When a state statute substantially interferes with the exercise of a fundamental liberty interest, it must satisfy a strict two-prong test to pass constitutional muster. Such a statute cannot be upheld unless it is supported by sufficiently important governmental interests and is closely tailored to effectuate only those interests. *See Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 303, 110 S. Ct. 2841, 2864 (1990) (Scalia, J., concurring); *Zablocki v. Redhail*, 434 U.S. 374, 388, 98 S. Ct. 673, 682 (1978). In order to be "sufficiently important," the asserted governmental interest must be compelling. *See Roe v. Wade*, 410 U.S. 113, 155, 93 S. Ct. 705, 728 (1973); *Hawk v. Hawk*, 855 S.W.2d at 579 n.8; *Davis v. Davis*, 842 S.W.2d 588, 602 (Tenn. 1992). The state and federal constitutions impose on the courts the obligation to examine carefully the extent to which the asserted governmental interests are served by the challenged statute, *see Moore v. City of East Cleveland*, 431 U.S. 494, 499, 97 S. Ct. 1932, 1936 (1977), and to assure that fundamental rights are protected, not only against heavy-handed frontal attack but also from being stifled by more subtle governmental interference. *See Bates v. City of Little Rock*, 361 U.S. 516, 523, 80 S. Ct. 412, 416 (1960).[13]

It is constitutionally impermissible to sever a parent's connection with his or her child unless there has first been a finding that the continuation of the parent-child relationship threatens the child's welfare. *See In re Adoption of a Female Child*

---

[12]When the Tennessee Supreme Court reversed our decisions that prisoners were not "citizens" entitled to access to public records, the Court noted that prisoners in Tennessee are not automatically stripped of all rights of citizenship upon conviction. *See Cole v. Campbell*, 968 S.W.2d 274, 276 (Tenn. 1998). This holding echoes the United States Supreme Court's admonition that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 2259 (1987).

[13]A clear shortcoming of the Eastern Section's analysis of the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6) in *Worley v. State* is that the court employed the wrong constitutional principles. By employing a "real and substantial relationship" analysis, the court actually used principles associated with an intermediate scrutiny analysis under the Equal Protection Clause of the Fourteenth Amendment. The United States Supreme Court traditionally uses intermediate scrutiny to analyze statutory classifications based on gender.

*(Bond v. McKenzie)*, 896 S.W.2d 546, 548 (Tenn. 1995); *Nale v. Robertson*, 871 S.W.2d at 680; *Hawk v. Hawk*, 855 S.W.2d at 582. Tennessee's newly minted adoption statutes contain a list of types of parental conduct that will trigger a termination proceeding. *See* Tenn. Code Ann. § 36-1-113(g). The necessary implication to be drawn from this list is that the General Assembly has concluded that the continuation of a child's relationship with a parent who commits any of the acts on the list ipso facto threatens the child's welfare. That rather sweeping conclusion may or may not be true depending on the facts of the case.

Tenn. Code Ann. § 36-1-113(g)(6) provides that the following conduct may trigger the initiation of a termination proceeding:

> The parent has been confined in a correctional or detention facility of any type, by order of a court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

This particular ground for terminating parental rights was not part of Tennessee's law until 1995.[14] Our statute is one of only six state statutes making a criminal conviction, by itself, grounds for triggering a termination proceeding.[15] Several other state statutes include conviction and incarceration in conjunction with other factors as grounds for terminating parental rights.[16] Most state termination statutes either do not mention incarceration specifically as separate grounds for termination[17] or simply

---

[14]*See* Act of May 26, 1995, ch. 532, § 1, 1995 Tenn. Pub. Acts 952, 986-87. Prior to the enactment of this statute, a parent's incarceration was not mentioned as a ground for termination but was a factor to be considered in the context of determining whether the parent had abandoned the child. *See* Tenn. Code Ann. § 36-1-102(l)(A)(iv) (Supp. 1998) for a current statutory example of this approach.

[15]The other five statutes are Ariz. Rev. Stat. Ann. § 8-533(B)(4) (1999), Colo. Rev. Stat. § 19-3-604(1)(b)(III) (1998), Idaho Code § 16-2005(j) (Supp. 1999), Iowa Code Ann. § 232.116(l)(i)(2) (West Supp. 1999), and Or. Rev. Stat. Ann. § 109.322 (Butterworths 1990).

[16]*See, e.g.*, Alaska Stat. § 47.10.080(o) (Supp. 1998); Kan. Stat. Ann. § 38-1583(b)(5) (Supp. 1998); La. Ch.'s Code Ann. art. 1015(6) & 1036(E) (West Supp. 1999); Mich. Comp. Laws Ann. § 712A.19b(3)(h) (West Supp. 1999).

[17]*See, e.g.*, Ark. Code Ann. § 9-9-220 (1998); Conn. Gen. Stat. Ann. § 17a-112 & 45a-717 (West Supp. 1999); Ky. Rev. Stat. Ann. § 625.090(2) (Michie Supp. 1998); Nev. Rev. Stat. § 128.106 (1997).

include conviction and incarceration as one of a number of factors to be considered when determining abandonment or unfitness.[18]

Substantial questions exist concerning the constitutionality of statutes like Tenn. Code Ann. § 36-1-113(g)(6) that permit courts to terminate parental rights because of the status of the parent rather than because of the detrimental effect of the parent-child relationship on the child.[19] Apart from the states' generalized interest in the welfare of children, these statutes, as a practical matter, have the effect of shifting the focus to the parent's conduct alone and away from an individualized identification of the states' particularized interests in severing a specific parent-child relationship. There are also substantial questions concerning the closeness of the fit between such a statute's means and its objectives because the use of per se triggering grounds in termination proceedings could very well result in cases where the child will actually be harmed by irretrievably severing his or her relationship with an otherwise fit incarcerated parent. If the fit between a statutory ground for termination on a parent's fitness cannot withstand close constitutional scrutiny, no amount of reliance on a child's best interests can save the statute.

## IV.

Reliance on the best interest analysis required by Tenn. Code Ann. § 36-1-113(c)(2) to cure the problems created by Tenn. Code Ann. § 36-1-113(g)'s list of per se grounds is misplaced. I can find no reported or unreported case in which a trial or appellate court in this State has determined that a child's best interests would not be served by terminating a parent's rights after determining that statutory grounds for termination of a parent's rights have been proven by clear and convincing evidence. While academically possible, it is unrealistic to expect that a trial court, after finding that a parent has engaged in conduct that warrants the termination of his or her

---

[18]*See, e.g.,* Ala. Code § 26-18-7(a)(4) (Supp. 1998); Del. Code Ann. 13 § 1103(a)(5) (Supp. 1998); Ga. Code Ann. § 15-11-81(b)(4)(B)(iii) (1999); Mo. Ann. Stat. § 211.447.6(6) (West Supp. 1999).

[19]*See* Philip M. Gentry, *Procedural Due Process Rights Of Incarcerated Parents In Termination Of Parental Rights Proceedings: A Fifty State Analysis*, 30 J. Fam. L. 757 (1991-92); Philip J. Prygoski, *When A Hearing Is Not A Hearing: Irrebuttable Presumptions and Termination Of Parental Rights Based On Status*, 44 U. Pitt. L. Rev. 879 (1983); Steven Fleischer, Note, *Termination Of Parental Rights: An Additional Sentence For Incarcerated Parents*, 29 Seaton Hall L. Rev. 312 (1998).

parental rights, will decline to terminate parental rights and leave the parent-child relationship intact.

The state and federal constitutions protect fundamental liberty interests from unwarranted governmental infringement whether the infringement is ill-motivated or well-intentioned. Mr. Rose has attempted to question whether Tenn. Code Ann. § 36-1-113(g)(6) impermissibly interferes with his constitutionally protected parental rights. The trial court decided this constitutional question without complying with Tenn. R. Civ. P. 24.04 and Tenn. Code Ann. § 29-14-107(b). Rather than penalizing Mr. Rose for the trial court's oversight, I would follow the lead of the Tennessee Supreme Court and vacate the trial court's decision and remand the case with directions to give proper notice to the Attorney General and to again address the issue of the constitutionality of Tenn. Code Ann. § 36-1-113(g)(6).

_____
WILLIAM C. KOCH, JR., JUDGE